UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINALD SAXTON,

    *Plaintiff*,

v.

DENIS McDONOUGH,

    *Defendant*.

Civil Action No. 21-1706 (RDM)

**MEMORANDUM OPINION**

Plaintiff Reginald Saxton alleges that he was subjected to discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, while working at the W.G. Hefner Veterans Affairs Medical Center in Salisbury, North Carolina. Although Plaintiff's complaint alleges that he lives in Salisbury, North Carolina and that all events relevant to his claims occurred there, *see* Dkt. 1 at 1–2 (Compl. ¶¶ 5–7), he brings this action in the United States District Court for the District of Columbia. According to Plaintiff's complaint, venue is proper in this district because "Defendant is a federal agency located in the District of Columbia." *Id.* at 1 (Compl. ¶ 3). Pending before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3) for failure to state a claim and improper venue, or, in the alternative, to transfer this case to the District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a). Dkt. 10. For the reasons set forth below, the Court will **GRANT** Defendant's motion to transfer the case to the Middle District of North Carolina.

**I.**

Under Federal Rule of Civil Procedure 12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems

appropriate.'" *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 96 (D.D.C. 2012) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)).  To "prevail on a motion to dismiss for improper venue," a "defendant must present facts that will defeat the plaintiff's assertion of venue," but the "burden . . . remains on the plaintiff to prove that venue is proper when an objection is raised, since it is the plaintiff's obligation to institute the action in a permissible forum."  *Roland v. Branch Banking & Trust Corp.*, 149 F. Supp. 3d 61, 67 (D.D.C. 2015) (quotation marks omitted).  "The [C]ourt may resolve the motion on the basis of the complaint alone, or, as necessary, [it may] examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff."  *McCain v. Bank of America*, 13 F.Supp.3d 45, 51 (D.D.C. 2014).

Even if venue is proper in the district where a complaint is filed, the Court may, in its discretion, transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a); *see also In re DRC, Inc.*, 358 Fed. App'x 193, 194 (D.C. Cir. 2009) ("The decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary.").  "A transfer in derogation of proper venue in the District of Columbia must be justified by particular circumstances that render the forum inappropriate by reference to considerations specified in the statute."  *Pac. Maritime Ass'n v. NLRB*, 905 F. Supp. 2d 55, 59 (D.D.C. 2012).  In deciding a motion to transfer venue under Section 1404(a), "a court must first determine whether the transferee district is one where the action 'might have been brought,' and then must balance the private and public interests involved in the proposed transfer to determine 'whether the defendant has demonstrated that considerations of convenience and the interest of

justice support a transfer.'" *Id.* (citation omitted) (first quoting 28 U.S.C. § 1404(a), then quoting *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007)).

    For the following reasons, the Court will transfer this action to the United States District Court for the Middle District of North Carolina pursuant to Section 1404.

II.

    Plaintiff's complaint alleges that venue is proper in the District of Columbia because "Defendant is a federal agency located in the District of Columbia." Dkt. 1 at 1 (Compl. ¶ 3). Generally, venue is proper in a district (1) where any defendant resides (if all defendants are residents of the same state); (2) where the events giving rise to the suit occurred; or (3) if "there is no district in which an action may otherwise be brought," in any district in which a defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). Title VII has its own venue provision, however. Under Title VII, a plaintiff may bring suit only (1) where "the unlawful employment practice is alleged to have been committed," (2) where "the employment records relevant to such practice are maintained and administered," or (3) where "the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Only if the defendant is not found within any of these districts may a plaintiff rely on a fourth possible venue—"the judicial district in which the respondent has his principal office." *Id.* Defendant argues that venue is improper in the District of Columbia under any of Title VII's four venue categories.

    The first, third, and fourth bases for venue under Title VII are lacking here. Plaintiff does not allege that any unlawful employment practices occurred in the District of Columbia or that he would have worked in the District of Columbia but for the alleged unlawful employment practices. Rather, the complaint alleges—and Plaintiff's opposition to Defendant's motion

confirms—that "the actions in the Complaint occurred in North Carolina." Dkt. 12 at 5; *see also* Dkt. 1 at 1–2 (Compl. ¶¶ 5–7). Venue is therefore proper in the Middle District of North Carolina under the first and third bases provided in Title VII, but not in this district. And, because venue exists elsewhere, Plaintiff cannot rely on Title VII's fourth basis for venue—the judicial district where Defendant is located—because that option is only available when the statute's other bases are inadequate. *See Slaby v. Holder*, 901 F. Supp. 2d 129, 135 (D.D.C. 2012).

That leaves only the second basis for venue: "the judicial district in which the employment records relevant to [the unlawful employment] practice are maintained and administered." 28 U.S.C. § 2000e-5(f)(3). "Courts in this district have interpreted [that provision] to mean that venue is proper in only one district: where the 'master set' of employment records is located." *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 87 (D.D.C. 2014). Defendant argues that "[t]he Complaint contains no allegation or reference to the location of any employment records that are relevant to this case, nor is there any reason to believe that any such records are located in the District of Columbia." Dkt. 10 at 18. The implication of Defendant's argument is that the "master set" of Plaintiff's employment records must be housed in North Carolina, where Plaintiff was hired, performed all of his work, and was ultimately terminated. *See* Dkt. 13 at 3. In response, Plaintiff contends that a "commonsense appraisal" of the circumstances supports the conclusion that "Plaintiff's employment records are maintained and administered at the U.S. Office of Personnel Management located at 1900 E Street Northwest, in Washington DC." Dkt. 12 at 5 (quotation marks omitted); *see also James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002) ("Courts can determine venue by applying a 'commonsense appraisal' of events having operative significance." (quoting *Lamont v. Haig*, 590 F.2d 1124,

1134 (D.C. Cir. 1978))). Neither party proffers any evidence of the actual location of Plaintiff's employment records.

On the present record, the Court cannot determine where the "master set" of Plaintiff's employment records are located. There is reason to doubt that the records are physically located in the District of Columbia because Plaintiff's entire employment history with the Department of Veterans Affairs took place in North Carolina, and Plaintiff has identified no evidence suggesting that his "master set" of records were ever mailed or otherwise sent to an office in the District of Columbia.[1]  In all likelihood, then, the relevant records are located in North Carolina at the medical center where Plaintiff worked. But, given that the Court is required to draw all reasonable inferences in Plaintiff's favor, the Court cannot exclude the possibility that the records are located in the District of Columbia, either because they are located at the Office of Personnel Management or the Department of Veterans' Affairs (which is headquartered in D.C.), or because they reside in an electronic file managed by one of those agencies.

In *Taylor v. Shinseki*, Judge John Bates grappled with a similar question—but unlike in this case, the parties in *Taylor* introduced conflicting evidence regarding where the plaintiff's employment records were located. 13 F. Supp. 3d at 87–89. The defendant cited an affidavit from a Department of Veterans Affairs employee stating that the plaintiff's records were located in the district where the plaintiff worked, while the plaintiff cited an affidavit from another Department of Veterans Affairs employee who stated that the records were maintained electronically "within the Department of Veteran Affairs in the District of Columbia." *Id.* at 88.

---

[1] Plaintiff argues that venue is proper in the District of Columbia because he "provided employment records to the [Equal Employment Opportunity Commission]" when filing complaints of discrimination with that agency. Dkt. 12 at 5. Because Title VII is concerned with the district where the "master set" of employment records is located, Plaintiff cannot establish venue in this district by mailing copies of his records to the EEOC.

5

Judge Bates observed that the relevant employment records might "fairly be said to exist in both [districts]," but he recognized that such a conclusion would "conflict . . . with the statute's command that venue is proper in 'the' district where the records are maintained and administered." *Id.* at 89. "Fortunately," wrote Judge Bates, "the Court need not resolve this tricky issue, for it finds that even if venue is proper in D.C., transfer . . . is the appropriate outcome." *Id.*

This case arguably raises the same "metaphysical" question that Judge Bates wrestled with in *Taylor*: that is, where do electronic records (which may be accessible anywhere in the United States) reside, and, because the venue provision in Title VII was enacted before records were typically stored in electronic files, how should courts apply a provision adopted in an age of paper when dealing with the age of electronic records? To be sure, those questions are not as neatly presented in this case because, unlike in *Taylor*, the parties have not proffered any evidence regarding the physical location or electronic management of the records at issue. But, as in *Taylor*, the need for further inquiry (and, here, the need for discovery and further factual development) is pretermitted by Defendant's alternative request that the Court transfer the case to the Middle District of North Carolina, where venue undoubtedly exits.

### III.

Defendant proposes transferring this case "for the convenience of [the] parties and witnesses, in the interest of justice," pursuant to Section 1404, to the Middle District of North Carolina. In determining whether to transfer a case under Section 1404, the Court must first determine whether the case could have been brought in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). As discussed, and as Plaintiff readily admits, *see* Dkt. 12 at 6, this case could have been brought in the Middle District of North Carolina. The second step in

6

the Section 1404 analysis requires that the Court decide whether the private and public interests favor transfer. *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018). The private interests include the "preferred forum of the parties," "the location where the claim arose," and "other factors of convenience," *id.* at 128, while the public interests include "the transferee district's familiarity with the governing law," "the relative congestion of the courts," and the "local interest in deciding local controversies at home," *id.* at 128–30.

The private interest considerations weigh in favor of transfer. First, as to the preferred forum of the parties, Defendant prefers the Middle District of North Carolina, *see* Dkt. 10 at 22, while Plaintiff prefers to (and did) bring this case in the District of Columbia, *see* Dkt 12 at 4–5. Although courts generally defer to a plaintiff's choice of forum, *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018), that deference is lessened when the "plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter,'" *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (alteration in original) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)), and when the plaintiff's choice is not the plaintiff's home forum, *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *4 (D.D.C. July 23, 2007). Defendant, on the other hand, "seeks to transfer to [Plaintiff's] home forum," which "weighs in favor of transfer." *Taylor*, 13 F. Supp. 3d at 90.

Second, the controversy in this case turns entirely on events that occurred in the Middle District of North Carolina. *See* Dkt. 10 at 22. That district, accordingly, has a "substantial connection to the controversy" in this case, and its residents would be most directly affected by the outcome. *Intrepid Potash-New Mexico, LLC v. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009).

Third, and relatedly, the convenience of the parties and of the witnesses favor transfer because Plaintiff, his former employer, and most—if not all—potential witnesses are located in the Middle District of North Carolina. *See* Dkt. 10 at 22. The convenience of the witnesses, in particular, has been described as "[t]he most critical factor" to deciding a motion to transfer, *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003), and here, "[t]he bulk of relevant witnesses identified by the parties" appear to be located in the Middle District of North Carolina, *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007). Those circumstances strongly favor transfer.

The public-interest factors also favor transfer. As discussed, the "local interest in deciding local controversies at home" favors transfer. *See Taylor*, 13 F. Supp. 3d at 92. The other public interest factors are concededly neutral: this case is governed by federal law, and courts in this district have repeatedly recognized that federal judges across the country are familiar with federal laws, including Title VII. *See, e.g.*, *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013). And, as to the "relative congestion of the courts," recent data is unhelpful; for cases that proceed to trial, no median time interval is provided for the Middle District of North Carolina because too few cases fell into that category during the relevant period, whereas the median time from filing to disposition in this district is 19.4 months. *See Table C-5—U.S. District Courts—Civil Statistical Tables for the Federal Judiciary*, United States Courts (June 30, 2021), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/06/30. But even if the docket in the Middle District of North Carolina is somewhat more congested than the docket of this Court, the additional time that would be required to conduct discovery and to resolve the legal and factual question where Plaintiff's

employment records are located with easily close that gap.[2]  Overall, in light of the "local interest" in deciding this case in North Carolina, the public-interest factors nevertheless tip in favor of transfer.

At bottom, venue doctrine is "primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  Here, the most convenient forum is Plaintiff's home forum, where all the relevant evidence, including witnesses, is almost certainly located.  By contrast, the District of Columbia's connection to this case is, at best, tenuous—at worst, it is insufficient to confer venue under Title VII.  Without deciding whether venue is proper in this district under Title VII, the Court will transfer the case pursuant to 28 U.S.C. § 1404(a) to the Middle District of North Carolina for the convenience of the parties and witnesses and in the interest of justice.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 14, 2022

---

[2]  The Court further notes that the hundreds of criminal cases arising from the January 6, 2021, assault on the Capitol have added substantially to the workload in this district, and that workload is not yet reflected in the data relating to disposition times in civil cases.